UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: ________________________

GERALD SHIELDS,

Plaintiff,

vs.

SHERIFF JOHN MINA, in his official capacity as Sheriff of Orange County, Florida, and DEPUTY ALEX VESCO, individually,

Defendants.
_____________________________________________/

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff Gerald Shields hereby sues Defendants Sheriff John Mina, in his official capacity as Sheriff of Orange County, Florida, and Deputy Alex Vesco, individually, (hereinafter referred to as "Vesco"), and alleges:

**INTRODUCTION**

1. On April 9, 2024, as he was video recording a traffic stop in Orange County, Florida from a safe distance, Gerald Sheilds was detained by an Orange County deputy, Defendant Vesco, because he did not like the fact that this citizen was recording the scene of the stop.

2. This unlawful stop of a pedestrian who was exercising his First Amendment right to video record the activities of law enforcement was followed by an escalation by Vesco, who demanded that this 77 year old, who had parked his car a short distance away before starting to record the stop, produce identification. It escalated

further when Vesco violently threw Mr. Shields to the ground, stopping his ability to further record the scene and injuring him. The deputy's conduct was plainly unreasonable.

3. Although Mr. Shields was never charged with any underlying crime or traffic infraction, Deputy Vesco arrested him for resisting an officer without violence (F.S. 843.02). That charge was dismissed on September 15, 2025.

4. Plaintiff now brings this action for damages against the deputy and the Sheriff of Orange County.

## PARTIES

5. At all times relevant to this Complaint, Plaintiff Gerald Shields was a resident of Marion County, Florida. He remains a resident of Marion County today.

6. John Mina is and was the Sheriff of Orange County, Florida and is sued in his official capacity.

7. At all times relevant to this Complaint, Alex Vesco was a sworn deputy with the Orange County Sheriff's Office, a law enforcement agency in the State of Florida. At all times relevant to this Complaint, Deputy Vesco was acting under the color of state law. Deputy Vesco is sued in his individual capacity.

## JURISDICTION AND VENUE

8. Plaintiff Gerald Shields brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983.

9. This Court has subject matter jurisdiction over the § 1983 claims under 28 U.S.C. § 1331 because the claims arise under the Constitution and the laws of the United States.

10. This Court has jurisdiction over the Florida State law claims under 28 U.S.C. § 1367(a) because they share a common nucleus of operative facts with the § 1983 claims.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

12. This Court has personal jurisdiction over the Orange County Sheriff's Office because it is a law enforcement agency organized and existing under the laws of the State of Florida.

13. This Court has personal jurisdiction over Alex Vesco because the acts, omissions and events giving rise to this Complaint occurred in Florida.

## FACTUAL ALLEGATIONS

### I. Deputy Vesco stops Gerald Shields for no lawful reason.

14. In the daylight hours of April 9, 2024, Gerald Shields, exercising his First Amendment rights, safely stopped and parked his car near the intersection of Willow Street and Orange Blossom Trail, got out and started video recording police activity that involved a number of Orange County deputy vehicles and a car with two black males that had apparently been the subject of a traffic stop.

15. At the time, Shields was 77 years of age, 5'9" and approximately 175 lbs.

16. Shields was in plain sight, across the street, where he could be easily seen holding up his cell phone and recording what the deputies were doing. He was never told to move away or back up. He never interfered with the deputies while they were conducting the stop and whatever investigation they were doing.

**II. Deputy Vesco approached Gerald Shields and slung him to the ground.**

17. Defendant Vesco saw Mr. Shields recording and when Shields lawfully walked across the street to another corner, avoiding the numerous marked law enforcement vehicles and the stopped car, Vesco walked directly to where Mr. Shields had stopped on the corner and demanded identification.

18. Mr. Shields had no identification on his person and repeatedly told Vesco that his identification was in his car parked down the road, but asked the deputy why he needed his identification and asked to see a supervisor.

19. Vesco continued to escalate this consensual encounter with Mr. Shields, becoming more and more aggressive and ultimately putting his hands on the Plaintiff and throwing him to the ground, injuring him. Shields was then handcuffed.

20. An ambulance had to be called and, after he was taken to a local hospital, Mr. Shields was escorted to the Orange County Jail.

**III. Gerald Shields incurs medical expenses and the costs of bond and criminal defense because of injuries caused by the slam.**

21. The slam to the ground caused injuries to Shield's head, scalp, right shoulder, right knee and right ankle.

22. Shields needed emergency transport to a hospital, underwent testing and received treatment before being released back to the Orange County Sheriff's Office.

23. He and his medical insurance carrier have been billed for his evaluation and treatment and the health insurer has asserted a lien.

24. Still in custody at the hospital, Mr. Shields was then cleared by the Emergency Department staff to be taken to jail and the Sheriff's Office then transported him to the correction center.

25. Mr. Shields had to pay to post a bond and then pay a lawyer $2,500.00 to defend him from the criminal charges levied against him by Vesco.

26. Shields was never charged with any underlying crime for traffic violations.

27. Mr. Shields has retained the undersigned to represent him in this matter and has agreed to pay him a reasonable attorney's fee and costs.

28. On or about November 12, 2025, the Plaintiff's counsel provided notice to the Orange County Sheriff's Office and the Department of Financial Services with written notice of claim via certified mail – return receipt requested pursuant to § 768.28, Florida Statutes.

29. Plaintiff Gerald Shields has complied with all conditions precedent, including the conditions precedent set forth in § 768.28, Florida Statutes, prior to filing this civil action.

**COUNT I – SECTION 1983**
**EXCESSIVE FORCE**
**CLAIM AGAINST ALEX VESCO (FOURTH AMENDMENT)**

30. Plaintiff Gerald Shields repeats and realleges each and every allegation contained in Paragraphs 1 through 29 as if more fully set forth at length herein.

31. When Deputy Vesco slammed Mr. Shields to the ground, he was acting under the color of state law as an on-duty Sheriff's deputy.

32. 42 U.S.C. § 1983 authorizes individuals to sue State officials acting under color of State law to vindicate rights secured by the United States Constitution and laws.

33. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).

34. Whether a use of force is excessive turns on the totality of the circumstances, with a particular focus on: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate safety threat to officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee arrest. *Graham v. Connor*, 490 U.S. 386, 296 (1989).

35. The crime that Vesco claims to have believed that Shields committed – resisting without violence – is by its terms a minor, non-violent misdemeanor. Fla. Stat. § 843.02(2022).

36. At the time the force was applied, Shields did not pose a threat to the deputy or to anyone else. Shields possessed only a cell phone and had no other weapon or device that could have possibly been a threat to the deputy. He did not make threatening statements or movements towards anyone at the scene. Mr. Shields, a 77 year old man who weighs approximately 175 lbs., was outnumbered six to one by armed deputies at the scene, all of whom were significantly larger than him.

37. At no point did Mr. Shields attempt to flee.

38. Nor was he actively resisting any lawful arrest at the time of the slam.

39. As a direct and proximate result of the slam to the ground, Mr. Shields suffered the injuries noted above and had to be transported to the hospital for evaluation and treatment.

**COUNT II – SECTION 1983**
**UNLAWFUL ARREST**
**CLAIM AGAINST ALEX VESCO (FOURTH AMENDMENT)**

40. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 29 of this Complaint, inclusive, as if more fully set forth at length herein.

41. When Deputy Vesco arrested Mr. Shields, he was acting under color of state law as an on-duty Sheriff's deputy.

42. Police violate the Fourth Amendment when they arrest a person without probable cause to believe he has committed a crime. *See, Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023).

43. The only claimed justification for Shields' arrest was that he resisted without violence. Under Florida law, resisting without violence is a misdemeanor that occurs when a person "resist[s], obstruct[s], or oppose[s] any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer." Fla. Stat. § 843.02(2022). The statute applies only when a person "willfully interferes with the lawful activities of the police." *See*, *Reynolds v. State*, 283, So.3d 885, 886 n.1 (Fla. 5th DCA 2019) (quoting *N.H. v. State*, 890 So.2d 514, 516 (Fla. 3d DCA 2005)).

44. In Florida however, "one *can* resist an officer who is not lawfully performing a duty, so long as that resistance is without violence." *B.L.M. v. State*, 684 So.2d 853, 854 (Fla. 5th DCA 1996).

45. As described infra ¶¶ 14-18, there was no lawful basis for Deputy Vesco to stop Mr. Shields in the first place. The deputy thus was not engaged in a legal execution of a lawful duty during the stop; instead, he was seizing Shields without reasonable suspicion in violation of the Fourth Amendment. Further, Mr. Shields never engaged in any activity that could reasonably be interpreted as resisting, obstructing, or opposing the deputy.

**COUNT III – SECTION 1983**
**UNLAWFUL STOP AND SEIZURE**
**CLAIM AGAINST ALEX VESCO (FOURTH AMENDMENT)**

46. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 29 of this Complaint, inclusive, as if more fully set forth at length herein.

47. Deputy Vesco stopped Mr. Shields under color of state law as an on-duty deputy sheriff.

48. "The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (cleaned up).

49. "A seizure of a person . . . can take the form of physical force or a show of authority that in some way restrains the liberty of the person." *Torres*, 592 U.S. at 311 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)) (cleaned up). A person has been seized under the Fourth Amendment when, under the totality of the circumstances, a

reasonable person would have believed that they were not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

50. Deputy Vesco made a show of authority that restrained Shields' liberty when he approached him in uniform, and demanded his identification papers (driver's license). A reasonable person in Shields' shoes would not have felt free to terminate the encounter and leave.

51. Shields submitted to Deputy Vesco's show of authority by staying put, telling him where his identification was located (in his parked car) and asking questions about why he was being stopped.

52. Deputy Vesco seized Mr. Shields within the meaning of the Fourth Amendment, at the latest, when he put his hands on Shields.

53. The Fourth Amendment prohibits even brief, investigatory seizures unless there is reasonable suspicion to believe the suspect is engaged in criminal activity. *See, Florida v. Royer*, 460 U.S. 491, 498 (1983).

54. Deputy Vesco lacked any arguable basis for reasonable suspicion that Shields had committed any crime.

55. The only justification Deputy Vesco ever offered for the stop was that – according to Deputy Vesco – Shields had not crossed the street at a 90° angle. However, Shields had done just that, from corner to corner, leaving a wide enough berth to the deputies' cars that blocked the area that would have held a crosswalk had one been present (there was none.) This was a mere pretext for stopping a citizen that was filming police actions, a protected activity under the First Amendment.

56. Deputy Vesco thus violated Mr. Shields' Fourth Amendment rights by stopping him without reasonable suspicion to believe he had committed a crime and preventing him from continuing to video record the ongoing police activity.

**COUNT IV – FLORIDA COMMON LAW**
**BATTERY**
**CLAIM AGAINST ALEX VESCO OR, IN THE ALTERNATIVE,**
**JOHN MINA, AS SHERIFF OF ORANGE COUNTY, FLORIDA**

57. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 29 of this Complaint, inclusive, as if more fully set forth at length herein.

58. Police officers may be held liable for battery under Florida law. *See*, *City of Boynton Beach v. Weiss*, 120 So.3d 606, 611 (Fla. 4th DCA 2013); Fla. Stat. § 768.28(9)(a) (2022).

59. "Florida law permits a plaintiff to recover against a government employer (here, a Sheriff's Department) for the actions of its employees based upon a theory of respondeat superior." *Gonzalez v. Johnson*, No. 24-22275-CIV, 2025 WL 1546523, *5 (S.D. Fla. May 30, 2025) (citing Fla. Stat. § 768.28); *see, also City of Boynton Beach*, 120 So.3d at 611. This liability is available where officers act within the course and scope of their employment and not in bad faith, with malicious purpose, or with wanton and willful disregard for human rights, safety, or property. Fla. Stat. § 768.28(9)(a)(2022).

60. The elements of battery are that (1) the defendant intended to cause harmful or offensive contact with the plaintiff, and (2) that such contact results. *See, Long v. Baker*, 37 F.Supp.3d 1243, 1252 (M.D. Fla. 2014).

61. Deputy Vesco intentionally and actually touched Mr. Shields by grabbing him and slamming him to the ground. That contact was harmful and offensive to Shields because it caused him pain and injuries that required immediate medical evaluation and treatment.

62. The force applied was clearly excessive because (1) the deputy had at most a subjective belief that Shields resisted without violence, (2) Shields did not pose a threat to the deputies or to anyone, and (3) Shields was a 175 lb., 77 year old man outnumbered six to one by armed, much larger deputies.

63. Deputy Vesco acted in bad faith or with wanton and willful disregard for Shields' safety; the decision to slam him to the ground had no plausible legitimate justification beyond the desire to harm. They are thus personally liable for the battery against Mr. Shields.

64. Alternatively, if Deputy Vesco did not act in bad faith or with wanton and willful disregard for Shields' safety, the Orange County Sheriff is vicariously liable for the battery. See Fla. Stat. § 768.28(9)(a) (2025); Id. § 768.28(9)(a)(2022).

**COUNT V – FLORIDA COMMON LAW**
**FALSE ARREST / FALSE IMPRISONMENT**
**CLAIM AGAINST ALEX VESCO OR, IN THE ALTERNATIVE,**
**JOHN MINA, SHERIFF OF ORANGE COUNTY, FLORIDA**

65. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 29 of this Complaint, inclusive, as if more fully set forth at length herein.

66. Florida law recognizes a false arrest tort that can be brought against a law enforcement officer. *Lester v. City of Tavares*, 603 So.2d 18, 19 (Fla. Dist. Ct. App. 1992).

67. The elements of false arrest under Florida law are: (1) that the defendant intentionally restrained the plaintiff, (2) under circumstances that were unreasonable and unwarranted, (3) without legal authority, and (4) the restraint caused the plaintiff harm. Fla. Std. Jury Instr. (Civ.), 407.2 (2026).

68. Deputy Vesco intentionally restrained Shields by handcuffing him and keeping him in "custody" while at the hospital and up until the time he was delivered to the jail.

69. It was unreasonable and unwarranted for the deputy to restrain Shields because he had not committed any unlawful act; as previously explained above, there was no probable cause to believe that Shields had resisted without violence.

70. The deputy lacked probable cause to arrest Mr. Shields, and the arrest was thus without legal authority.

71. Shields was harmed by this detention because his liberty of movement was restrained, both at the scene, in the ambulance and at the hospital. He also suffered dignitary injuries from being detained, especially in public at the hospital. Finally, the restraint in the hospital made medical treatment more difficult.

72. The deputy acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights in arresting Mr. Shields because it was clear and obvious that he was not resisting without violence. He is thus personally liable to Shields under Florida law.

73. Alternatively, if the deputy was not acting in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, then the Sheriff of Orange County is liable for his conduct.

74. The deputy was acting within the course and scope of his employment as a Sheriff's deputy when he arrested Mr. Shields; he was on-duty, in uniform, and claiming state authority.

## COUNT VI – SECTION 1983
## VIOLATION OF FIRST AMENDMENT CLAIM

75. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 29 and Paragraphs 47 through 56 of this Complaint, inclusive, as if more fully set forth at length herein.

76. Mr. Shields was openly video recording police activity going on in a public space at a safe distance without interfering with that police activity.

77. Citizens have a First Amendment right, subject to reasonable time, manner and place, to photograph or videotape police conduct. *See, Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). This right is firmly established and is actually part of the Orange County Sheriff's Offices "Legal Bulletin."

78. Orange County Sheriff's Office training memorandums also informs its employees, including Deputy Vesco, that if a deputy sees a person recording or taking photographs in a public area that they may conduct a consensual encounter with that person, but that the person is not required to tell the deputy their name, provide identification or explain why they are there.

79. When Deputy Vesco physically forced Mr. Shields to stop recording with his cell phone, he violated Mr. Shields' firmly established First Amendment right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gerald Shields respectfully requests that the Court award the following relief:

a. Compensatory damages, including but not limited to claims for criminal defense attorney's fees, costs of bond (as applicable), ambulance, hospital and medical fees, pain and suffering, and dignitary harms, against all Defendants for all Counts;

b. Punitive damages for all Counts against Defendant Deputy Vesco (the Plaintiff will move to amend the State Law claims to add the punitive damage claim after discovery, pursuant to F.S. § 768.72);

c. An award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable authority for all § 1983 Counts, and

d. Any other legal or equitable relief the Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff Gerald Shields hereby demands a jury trial in this action.

**DATED** this 23rd day of September, 2026

**s/ Daniel P. Faherty**
**DANIEL P. FAHERTY, ESQUIRE**
Florida Bar No. 379697
TELFER, FAHERTY & ANDERSON, P.L.L.C.
815 South Washington Avenue
Suite 201
Titusville, FL 32780
Telephone No.: (321) 269-6833
Facsimile No.: (321) 383-9970
Counsel for Plaintiff
cguntner@ctrfa.com
croca@ctrfa.com